UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| INDIVIOR INC., INDIVIOR UK LIMITED, and AQUESTIVE THERAPEUTICS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AVEVA DRUG DELIVERY SYSTEMS, INC., APOTEX CORP., and APOTEX INC. <br><br> Defendants. | Case No. _____ – Civ <br><br> (Filed Electronically) |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Indivior Inc., Indivior UK Limited, and Aquestive Therapeutics, Inc. (collectively, "Plaintiffs") file this Complaint against Defendants Aveva Drug Delivery Systems, Inc., Apotex Corp., and Apotex Inc. (collectively, "Defendants") and allege as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the Food and Drug Laws and Patent Laws of the United States, Titles 21 and 35 of the United States Code, respectively, arising from Defendants' Abbreviated New Drug Application ("ANDA") to the Food and Drug Administration ("FDA") seeking approval to manufacture, use, and sell a generic version of Plaintiffs' Suboxone® sublingual film prior to the expiration of U.S. Patent Nos. 8,017,150 ("the '150 patent"); 8,603,514 ("the '514 patent"); 9,687,454 ("the '454 patent"); and 9,931,305 ("the '305 patent") (collectively, the "patents-in-suit").

**THE PARTIES**

2. Plaintiff Indivior Inc. ("Indivior") is a Delaware corporation having a principal place of business at 10710 Midlothian Turnpike, Suite 430, North Chesterfield, VA 23235.

1

3. Plaintiff Indivior UK Limited ("Indivior UK") is a United Kingdom corporation having a principal place of business at 103-105 Bath Road, Slough, UK.

4. Plaintiff Aquestive Therapeutics, Inc. ("Aquestive") is a Delaware corporation having a principal place of business at 30 Technology Drive, Warren, NJ 07059.

5. On information and belief, Aveva Drug Delivery Systems, Inc. ("Aveva") is a Florida corporation having a principal place of business at 3250 Commerce Park Way, Miramar, FL 33025.

6. On information and belief, Aveva is a wholly owned subsidiary of Apotex Inc.

7. On information and belief, Apotex Corp. is a Delaware corporation having a principal place of business at 2400 N. Commerce Parkway, Suite 400, Weston, FL 33326.

8. On information and belief, Apotex Corp. is a majority-owned subsidiary of Apotex Inc.

9. On information and belief, Apotex Inc. is a company organized and existing under the laws of Canada, with its principal place of business located at 150 Signet Drive, Toronto, Ontario, M9L 1T9, Canada.

10. On information and belief, Aveva, Apotex Corp., and Apotex Inc. collaborate with respect to the development, regulatory approval, marketing, sale, and/or distribution of pharmaceutical products. On further information and belief, Aveva, Apotex Corp., and Apotex Inc. are agents of each other and/or operate in concert as integrated parts of the same business group, and enter into agreements with each other that are nearer than arm's length.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

12. On information and belief, Aveva is in the business of, *inter alia*, developing, manufacturing, obtaining regulatory approval, marketing, selling, and distributing generic copies of branded pharmaceutical products in Florida and throughout the United States.

13. This Court has personal jurisdiction over Aveva because of, *inter alia*, Aveva's incorporation in Florida; Aveva's principal place of business in Florida; Aveva's continuous and systematic contacts with corporate entities within this Judicial District; Aveva's purposeful availment of the benefits and protections of the laws of Florida; and Aveva's marketing and sales activities in this Judicial District, including, but not limited to, the substantial, continuous, and systematic distribution, marketing, and/or sales of generic pharmaceutical products to residents of this Judicial District.

14. On information and belief, Apotex Corp. is in the business of, *inter alia*, developing, manufacturing, obtaining regulatory approval, marketing, selling, and distributing generic copies of branded pharmaceutical products in Florida and throughout the United States.

15. This Court has personal jurisdiction over Apotex Corp. because of, *inter alia*, Apotex Corp.'s principal place of business in Florida; Apotex Corp.'s continuous and systematic contacts with corporate entities within this Judicial District; Apotex Corp.'s purposeful availment of the benefits and protections of the laws of Florida; and Apotex Corp.'s marketing and sales activities in this Judicial District, including, but not limited to, the substantial, continuous, and systematic distribution, marketing, and/or sales of generic pharmaceutical products to residents of this Judicial District.

16. On information and belief, Apotex Inc. is in the business of, *inter alia*, developing, manufacturing, obtaining regulatory approval, marketing, selling, and distributing generic copies of branded pharmaceutical products in Florida and throughout the United States.

17.     Apotex Inc. has previously consented to personal jurisdiction in this Court in other cases.  *See, e.g.*, *UCB, Inc. et al. v. Apotex Inc.*, No. 0:18-cv-60846-MGC, D.I. 16 at 3–4 (S.D. Fla. May 10, 2018); *Amgen Inc. et al. v. Apotex Inc. et al.*, No. 0:15-cv-61632-JIC, D.I. 47 at 5 (S.D. Fla. Oct. 23, 2015).  In addition, Apotex Inc. has previously submitted to this Court's jurisdiction and previously availed itself of this Court by filing suit in this jurisdiction and/or by asserting counterclaims in other civil actions initiated in this jurisdiction.  *See, e.g.*, *Apotex Inc. et al. v. Teva Pharmaceutical Industries, Ltd. et al.*, No. 0:13-cv-60601-PAS (S.D. Fla. filed Mar. 14, 2013); *Apotex Inc. et al. v. Mylan Pharmaceuticals, Inc.*, No. 0:12-cv-60704-PAS (S.D. Fla. filed Apr. 20, 2012).  Further, Apotex Inc. has previously admitted that this Court has personal jurisdiction over both Apotex Corp. and Apotex Inc.  *See Alcon Manufacturing, Ltd. et al. v. Apotex Inc. et al.*, No. 1:06-cv-01642-RLY-TAB, D.I. 23 at 7 (S.D. Ind. Dec. 13, 2006) ("Plaintiffs could have brought this action in the S.D.Fla. because the S.D.Fla. has personal jurisdiction over both Defendants[.]  Apotex Corp. has a principal place of business in Weston, Florida, while Apotex Inc. is a Canadian corporation that regularly conducts business in Florida.  Thus, venue in the S.D.Fla. would also be proper.").

18.     This Court has personal jurisdiction over Apotex Inc. because of, *inter alia*, Apotex Inc.'s conducting business in Florida; Apotex Inc.'s deriving revenue from conducting business in Florida; Apotex Inc.'s maintenance of at least one wholly-owned subsidiary in Florida; and Apotex Inc.'s marketing and sales activities in this Judicial District, including, but not limited to, the substantial, continuous, and systematic distribution, marketing, and/or sales of generic pharmaceutical products to residents of this Judicial District.

19.     In the alternative, should Apotex Inc. contest jurisdiction in this forum, this Court has personal jurisdiction over Apotex Inc. pursuant to Fed. R. Civ. P. 4(k).

20. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

## THE PATENTS-IN-SUIT

21. Plaintiff Aquestive is the lawful owner of the '150 patent, and Plaintiff Indivior is an exclusive licensee of the '150 patent and holds exclusionary rights to market and sell Suboxone® sublingual film in the United States. The '150 patent, entitled "Polyethylene Oxide-Based Films and Drug Delivery Systems Made Therefrom," was duly and legally issued on September 13, 2011 naming Robert K. Yang, Richard C. Fuisz, Garry L. Myers, and Joseph M. Fuisz as inventors. A true copy of the '150 patent is attached hereto as Exhibit A.

22. Plaintiff Aquestive is the lawful owner of the '514 patent, and Plaintiff Indivior is an exclusive licensee of the '514 patent and holds exclusionary rights to market and sell Suboxone® sublingual film in the United States. The '514 patent, entitled "Uniform Films for Rapid Dissolve Dosage Form Incorporating Taste-Masking Compositions," was duly and legally issued on December 10, 2013, naming Robert K. Yang, Richard C. Fuisz, Garry L. Myers, and Joseph M. Fuisz as inventors. A true copy of the '514 patent is attached hereto as Exhibit B.

23. Plaintiff Indivior UK is the lawful owner of the '454 patent, and Plaintiff Indivior is an exclusive licensee of the '454 patent. The '454 patent, entitled "Sublingual and Buccal Film Compositions," was duly and legally issued on June 27, 2017, naming Garry L. Myers, Samuel D. Hilbert, Bill J. Boone, Beuford Arlie Bogue, Pradeep Sanghvi, and Madhusudan Hariharan as inventors. A true copy of the '454 patent is attached hereto as Exhibit C.

24. Plaintiff Aquestive is the lawful owner of the '305 patent, and Plaintiff Indivior is an exclusive licensee of the '305 patent and holds exclusionary rights to market and sell Suboxone® sublingual film in the United States. The '305 patent, entitled "Uniform Films for Rapid-Dissolve Dosage Form Incorporating Taste-Masking Compositions," was duly and legally issued on April

5

3, 2018, naming Robert Yang, Richard C. Fuisz, Garry L. Myers, and Joseph M. Fuisz as inventors. A true copy of the '305 patent is attached hereto as Exhibit D.

## SUBOXONE® SUBLINGUAL FILM

25. Plaintiff Indivior is the holder of New Drug Application ("NDA") No. 22-410 for Suboxone® (buprenorphine hydrochloride and naloxone hydrochloride) sublingual film.

26. On August 30, 2010, the FDA approved NDA No. 22-410 for the manufacture, marketing, and sale of Suboxone® sublingual film for the treatment of opioid dependence. Plaintiff Indivior has sold Suboxone® sublingual film under NDA No. 22-410 since its approval.

27. The patents-in-suit are listed in FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") as covering Suboxone® sublingual film.

## THE DRUG APPROVAL PROCESS

28. In 1984, Congress enacted the Drug Price Competition and Patent Term Restoration Act, commonly known as the "Hatch-Waxman Act" and codified at 21 U.S.C. § 355. The Hatch-Waxman Act was intended to balance two important public policy goals. First, Congress wanted to ensure that innovator drug manufacturers would have meaningful patent protection and a period of marketing exclusivity to enable them to recoup their investments in the development of valuable new drugs. Second, Congress sought to ensure that, once the patent protection and marketing exclusivity for these drugs expire, consumers would benefit from the availability of lower priced generic versions of approved drugs.

29. Under 21 U.S.C. § 355(b)(1), the innovator drug manufacturer and NDA applicant is required to submit extensive testing and safety information concerning the drug. In addition, the NDA applicant must submit information on "any patent which claims the drug for which the applicant submitted the application or which claims a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted." Once the NDA is approved,

6

the FDA lists this patent information in its *Approved Drug Products with Therapeutic Equivalence Evaluations*, commonly known as the "Orange Book."

30.     In contrast, the Hatch-Waxman Act allows ANDA applicants to obtain FDA approval for generic versions of previously approved drugs without having to repeat the extensive testing required for an NDA.  Under 21 U.S.C. § 355(j), ANDAs can rely on FDA's previous findings of safety and efficacy for an approved drug product, if they demonstrate, among other things, that the generic drug is bioequivalent to the previously-approved drug.

31.     When a generic manufacturer submits an ANDA, the FDA conducts a preliminary review of the application to ensure it is sufficiently complete to permit a substantive review. *See* 21 C.F.R. § 314.101(b)(1).  "Receipt of an [ANDA] means that FDA has made a threshold determination that the abbreviated application is sufficiently complete to permit a substantive review." *Id.*

32.     Under 21 U.S.C. § 355(j)(2)(A)(vii), the ANDA must also include one of the following four certifications with respect to each of the patents listed in the Orange Book for the previously-approved drug product: (i) that the patent information has not been filed ("Paragraph I" certifications); (ii) that the patent has expired ("Paragraph II" certifications); (iii) that the patent will expire on a specific date ("Paragraph III" certifications); or (iv) that the "patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted" ("Paragraph IV" certifications).

33.     Paragraph IV certifications can allow generic manufacturers to obtain FDA approval before expiration of the patents listed in the Orange Book.

34.     If the ANDA includes a Paragraph IV certification, the Hatch-Waxman Act requires the ANDA applicant to give notice ("notice of Paragraph IV certification") to the patent

7

owner of the factual and legal basis for the applicant's opinion that patents listed in the Orange Book are invalid or will not be infringed, "not later than 20 days after the date of the postmark on the notice with which the [FDA] informs the applicant that the application has been filed." 21 U.S.C. § 355(j)(2)(B).

35.     The patent owner can file an infringement action within 45 days of receiving the notice of Paragraph IV certification.  Such a filing by the patent owner triggers a 30-month injunction or stay of the FDA approval, beginning on the date of receipt of the notice.  *See* 21 U.S.C. § 355(j)(5)(B)(iii).  This 30-month period is intended to allow time for judicial resolution on the merits of any patent infringement, validity, and/or enforceability claims, before the competitor is allowed entry into the market.

36.     Federal regulations also govern the timing of the notice of Paragraph IV certification by directing the generic manufacturer to send such notice "when it receives from FDA an acknowledgment letter stating that its [ANDA] is sufficiently complete to permit a substantive review." 21 C.F.R. § 314.95(b).

## DEFENDANTS' ANDA

37.     Plaintiffs received a letter from Aveva dated February 6, 2019 (the "Notification Letter"), stating that ANDA No. 212756 contains a certification pursuant to 21 U.S.C. § 355(j)(2)(B)(vii)(IV) (a "Paragraph IV certification") alleging that the '150, '514, '454, and '305 patents are invalid, unenforceable, and/or will not be infringed by the manufacture, use, or sale of the generic product proposed in the ANDA.

38.     The Notification Letter further states that Aveva submitted ANDA No. 212756 to the FDA under 21 U.S.C. § 355(j), seeking approval to engage in the commercial manufacture, use, and/or sale of buprenorphine hydrochloride and naloxone hydrochloride sublingual film ("Defendants' generic product") before expiration of the patents-in-suit.  On information and

8

belief, ANDA No. 212756 refers to and relies on Plaintiff Indivior's NDA for Suboxone® sublingual film and purports to contain data showing bioequivalence of Defendants' generic product with Suboxone® sublingual film.

39. The Notification Letter included an Offer of Confidential Access ("OCA") under 21 U.S.C. § 355(j)(5)(C)(i)(III), and the parties negotiated the terms of access. Under the terms of the negotiated OCA, Aveva provided Plaintiffs with portions of ANDA No. 212756. Plaintiffs formed a good-faith basis to believe that Defendants infringe at least one claim of each of the patents-in-suit based on their review of the portion of ANDA No. 212756 produced to them, but the terms of the negotiated OCA prevent Plaintiffs from including the basis for their good-faith belief here.

40. On information and belief, although Aveva is the party that served the Notification Letter and purports to have submitted ANDA No. 212756 to FDA, Aveva, Apotex Corp., and Apotex Inc. have assisted with and participated in the preparation and submission ANDA No. 212756, have provided material support to the preparation and submission of ANDA No. 212756, and intend to support the further prosecution of ANDA No. 212756.

41. On information and belief, Aveva, Apotex Corp., and Apotex Inc. will benefit, in a significant manner, from FDA's approval of ANDA No. 212756, and will engage and/or be involved in the commercial manufacture, use, or sale of Defendants' generic product.

42. Plaintiffs commenced this action within 45 days of receiving the Notification Letter.

## COUNT I
### Infringement of the '150 Patent Under 35 U.S.C. § 271(e)(2)

43. Plaintiffs reallege paragraphs 1–42 above as if fully set forth herein.

44. On information and belief, Defendants' generic product is covered by one or more claims of the '150 patent, including, but not limited to, claim 1.

45. By filing ANDA No. 212756 under 21 U.S.C. § 355(j) for the purposes of obtaining approval to engage in the commercial manufacture, use, sale, and/or importation of Defendants' generic product prior to the expiration of the '150 Patent, Defendants have committed an act of infringement of at least claim 1 of the '150 patent under 35 U.S.C. § 271(e)(2).

46. Plaintiffs are entitled to the relief provided by 35 U.S.C. § 271(e)(4), including, *inter alia*, an order of this Court that the FDA set the effective date of approval for ANDA No. 212756 to be a date which is not any earlier than the expiration date of the '150 patent, including any extensions of that date.

## COUNT II
### Declaratory Judgment of Infringement of the '150 Patent Under 35 U.S.C. § 271

47. Plaintiffs reallege paragraphs 1–46 above as if fully set forth herein.

48. On information and belief, unless enjoined by this Court, Defendants plan and intend to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Defendants' generic product immediately following approval of ANDA No. 212756.

49. On information and belief, Defendants' commercial manufacture of Defendants' generic product before the expiration of the '150 patent would infringe one or more claims of the '150 patent, including, but not limited to, claim 1, under 35 U.S.C. § 271.

50. The acts of infringement by Defendants set forth above will cause Plaintiffs irreparable harm for which they have no adequate remedy at law, and those acts will continue unless enjoined by this Court.

## COUNT III
### Infringement of the '514 Patent Under 35 U.S.C. § 271(e)(2)

51.     Plaintiffs reallege paragraphs 1–50 above as if fully set forth herein.

52.     On information and belief, Defendants' generic product is covered by one or more claims of the '514 patent, including, but not limited to, claim 62.

53.     By filing ANDA No. 212756 under 21 U.S.C. § 355(j) for the purposes of obtaining approval to engage in the commercial manufacture, use, sale, and/or importation of Defendants' generic product prior to the expiration of the '514 patent, Defendants have committed an act of infringement of at least claim 62 of the '514 patent under 35 U.S.C. § 271(e)(2).

54.     Plaintiffs are entitled to the relief provided by 35 U.S.C. § 271(e)(4), including, *inter alia*, an order of this Court that the FDA set the effective date of approval for ANDA No. 212756 to be a date which is not any earlier than the expiration date of the '514 patent, including any extensions of that date.

## COUNT IV
### Declaratory Judgment of Infringement of the '514 Patent Under 35 U.S.C. § 271

55.     Plaintiffs reallege paragraphs 1–54 as if fully set forth herein.

56.     On information and belief, unless enjoined by this Court, Defendants plan and intend to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Defendants' generic product immediately following approval of ANDA No. 212756.

57.     On information and belief, Defendants' commercial manufacture of Defendants' generic product before the expiration of the '514 patent would infringe one or more claims of the '514 patent, including, but not limited to, claim 62, under 35 U.S.C. § 271.

58. The acts of infringement by Defendants set forth above will cause Plaintiffs irreparable harm for which they have no adequate remedy at law, and those acts will continue unless enjoined by this Court.

## COUNT V
### Infringement of the '454 Patent Under 35 U.S.C. § 271(e)(2)

59. Plaintiffs reallege paragraphs 1–58 as if fully set forth herein.

60. On information and belief, Defendants' generic product is covered by one or more claims of the '454 patent, including, but not limited to, claim 1.

61. By filing ANDA No. 212756 under 21 U.S.C. § 355(j) for the purposes of obtaining approval to engage in the commercial manufacture, use, sale, and/or importation of Defendants' generic product prior to the expiration of the '454 patent, Defendants have committed an act of infringement of at least claim 1 of the '454 patent under 35 U.S.C. § 271(e)(2).

62. Plaintiffs are entitled to the relief provided by 35 U.S.C. § 271(e)(4), including, *inter alia*, an order of this Court that the FDA set the effective date of approval for ANDA No. 212756 to be a date which is not any earlier than the expiration date of the '454 patent, including any extensions of that date.

## COUNT VI
### Declaratory Judgment of Infringement of the '454 Patent Under 35 U.S.C. § 271

63. Plaintiffs reallege paragraphs 1–62 as if fully set forth herein.

64. On information and belief, unless enjoined by this Court, Defendants plan and intend to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Defendants' generic product immediately following approval of ANDA No. 212756.

65. On information and belief, Defendants' commercial manufacture of Defendants' generic product before the expiration of the '454 patent would infringe one or more claims of the '454 patent, including, but not limited to, claim 1, under 35 U.S.C. § 271.

66. The acts of infringement by Defendants set forth above will cause Plaintiffs irreparable harm for which they have no adequate remedy at law, and those acts will continue unless enjoined by this Court.

## COUNT VII
### Infringement of the '305 Patent Under 35 U.S.C. § 271(e)(2)

67. Plaintiffs reallege paragraphs 1–66 as if fully set forth herein.

68. On information and belief, Defendants' generic product is covered by one or more claims of the '305 Patent, including, but not limited to, claim 26.

69. By filing ANDA No. 212756 under 21 U.S.C. § 355(j) for the purposes of obtaining approval to engage in the commercial manufacture, use, sale, and/or importation of Defendants' generic product prior to the expiration of the '305 patent, Defendants have committed an act of infringement of at least claim 26 of the '305 patent under 35 U.S.C. § 271(e)(2).

70. Plaintiffs are entitled to the relief provided by 35 U.S.C. § 271(e)(4), including, *inter alia*, an order of this Court that the FDA set the effective date of approval for ANDA No. 212756 to be a date which is not any earlier than the expiration date of the '305 patent, including any extensions of that date.

## COUNT VIII
### Declaratory Judgment of Infringement of the '305 Patent Under 35 U.S.C. § 271

71. Plaintiffs reallege paragraphs 1–70 as if fully set forth herein.

72. On information and belief, unless enjoined by this Court, Defendants plan and intend to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or

importation of Defendants' generic product immediately following approval of ANDA No. 212756.

73. On information and belief, Defendants' commercial manufacture of Defendants' generic product before the expiration of the '305 patent would infringe one or more claims of the '305 patent, including, but not limited to, claim 26, under 35 U.S.C. § 271.

74. The acts of infringement by Defendants set forth above will cause Plaintiffs irreparable harm for which they have no adequate remedy at law, and those acts will continue unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter:

A. A judgment that Defendants have infringed each of the patents-in-suit under 35 U.S.C. § 271(e)(2) by submitting and maintaining ANDA No. 212756;

B. A declaratory judgment that Defendants' commercial manufacture within the United States of Defendants' generic product would infringe each of the patents-in-suit under 35 U.S.C. § 271;

C. Preliminary and permanent injunctions, restraining and enjoining Defendants, their officers, agents, attorneys, affiliates, divisions, successors and employees, and those acting in activity or concert with them, from engaging in, causing, or inducing the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of drugs and formulations, or from inducing and/or encouraging the use of methods, claimed in the patents-in-suit;

D. An order that the effective date of any approval of ANDA No. 212756 be a date that is not earlier than the expiration of the patents-in-suit, including and extensions thereof and any later expiration of exclusivity associated with the patents-in-suit;

E. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiffs their reasonable attorneys' fees;

F. A judgment granting Plaintiffs compensatory damages in an amount to be determined at trial including both pre-judgment and post-judgment interest if Defendants commercially manufacture, use, offer to sell, or sell in the United States, or import into the United States, Defendants' generic product before the expiration of the patents-in-suit, including any extensions; and

G. Any and all other relief as the Court deems just and proper.

Dated: March 22, 2019

Respectfully submitted,

**NELSON MULLINS BROAD AND CASSEL**
2 South Biscayne Blvd, 21st Floor
Miami, Florida 33131
Telephone: 305.373.9447
Facsimile: 305.995.6403

*/s/ Jonathan Etra*
Jonathan Etra, Esq.
Florida Bar No.: 0686905
jonathan.etra@nelsonmullins.com
Christopher Cavallo, Esq.
Florida Bar No.: 0092305
chris.cavallo@nelsonmullins.com
*Counsel for Plaintiffs*

**COVINGTON & BURLING LLP**
*Pro Hac Vice to be Filed*
Jeffrey B. Elikan (jelikan@cov.com)
Jeffrey H. Lerner (jlerner@cov.com)
Matthew Kudzin (mkudzin@cov.com)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000

*Counsel for Plaintiffs Indivior Inc. and Indivior UK Limited*

**STEPTOE & JOHNSON LLP**
*Pro Hac Vice to be Filed*

James F. Hibey (jhibey@steptoe.com)
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

Jamie Lucia (jlucia@steptoe.com)
1 Market Street
Steuart Tower, Suite 1800
San Francisco, CA 94105
(415) 365-6711

*Counsel for Plaintiff*
*Aquestive Therapeutics, Inc.*